IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICKY DEON BOYER, | ) | |
| | ) | |
| Petitioner, | ) | Civil Action No. 07-929 |
| | ) | |
| v. | ) | Judge Lancaster |
| | ) | Magistrate Judge Bissoon |
| GERALD L. ROZUM, *et al.*, | ) | |
| | ) | |
| Respondents. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I. RECOMMENDATION

It is recommended that the Petition for Writ of Habeas Corpus filed by Ricky Deon Boyer be dismissed and that a certificate of appealability be denied.

### II. REPORT

Petitioner, Ricky Deon Boyer, was convicted in the Court of Common Pleas of Allegheny County on July 28, 2000, of one count of Criminal Attempt (Robbery), two counts of Criminal Conspiracy, and three counts of Robbery. The charges arose out of two attempts by Boyer and an accomplice to rob the QwiCash check-cashing service located in the Homewood section of Pittsburgh. The first attempt, on August 30, 1999, failed when Boyer could not gain access to the store. The following day, Boyer fired several shots from a handgun into the security windows, and then proceeded to rob a customer of the store before fleeing the scene. Boyer was sentenced to an aggregate term of imprisonment of 15 to 60 years on September 11, 2000.

Boyer filed post-trial motions in which he raised four claims:

1. Trial counsel rendered ineffective assistance in failing to request a severance from the co-defendant, Pierre L. Pinson.

1

    2. Trial counsel rendered ineffective assistance in failing to file a motion for the suppression of the firearm found in the home where Pierre Pinson was arrested.

    3. The trial court erred in allowing the Commonwealth to admit the firearm found in the home where Pierre Pinson was arrested, because its prejudicial impact far outweighed its probative value and it was not relevant to the case.

    4. Trial counsel was ineffective for failing to request a jury instruction directing the jury to consider the prior inconsistent statements of the Commonwealth's eyewitnesses for substantive and impeachment purposes.

(Doc. 18-3, pp. 3-5). The trial court denied relief, and Boyer filed an appeal in the Superior Court of Pennsylvania, and raised two claims:

    1. Trial counsel rendered ineffective assistance in failing to request a severance from the co-defendant.

    2. The trial court erred in allowing the prosecutor to admit collateral and irrelevant evidence which had no relevance to the case at bar and suggested to the jury that the defendants were involved in uncharged criminal activity.

(Id., p. 14). The Superior Court affirmed, and Petitioner's subsequent petition for allowance of appeal was denied by the Supreme Court of Pennsylvania on September 12, 2002.

Petitioner thereafter filed a petition pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. § 9541, *et esq.*, in which he asserted three new claims:

    1. Trial counsel was ineffective for failing to call alibi witnesses;

    2. Trial counsel was ineffective for failing to pursue the possibility of procuring taped phone records between [Boyer] and his mother at the date and time of the incident; and

    3. Petitioner's constitutional rights were violated when Detective Logan intimidated him into signing a confession.

(Id., pp. 38-41). The trial court denied relief, finding that: (1) Boyer failed to indicate the nature of the proposed alibi testimony" (Doc. 18-5, p. 38); (2) Boyer failed to establish the content of

the purported taped telephone conversation (Id.); and (3) Boyer waived his right to challenge his confession (Id.).

Boyer thereafter presented two claims on appeal to the Superior Court from the denial of PCRA relief:

> 1. Mr. Boyer's trial counsel rendered ineffective assistance of counsel for failing to call witnesses and failing to procure a taped telephone conversation between Mr. Boyer and his mother. Appellate counsel was ineffective in failing to address these claims on appeal.
>
> 2. Mr. Boyer's constitutional rights were violated when a police officer intimidated him into making an unsworn confession. All prior attorneys were ineffective in failing to address this claim at an earlier point in the proceedings.

(Doc. 18-5, p. 20).

The Superior Court affirmed the denial of PCRA relief, finding that the proposed testimony of two proposed witnesses, Moultrie and Fleming, was not presented to the PCRA court (Doc. 18-6, p. 25). In fact, the only affidavit presented by Boyer was from his mother, Donna Boyer, stating that she spoke to Boyer on the telephone at "about 8:30-8:45 a.m." on August 30, 1999 (Id.). The Court noted that the victim of the attempted robbery was not precise about the timing of the attempted robbery, stating that it occurred "around 8:45 a.m." (Id.). Thus, Superior Court concluded that the proposed testimony would not have established an alibi, because it did not rule out Boyer's participation in the crime (Id., p. 26). The Superior Court also found that Boyer offered no evidence that any taped telephone records existed, making that claim meritless as well (Id., pp. 26-27). Lastly, the Superior Court noted that Boyer had waived his claim of a coerced confession by failing to raise it with the trial court or on direct appeal, and noted that Boyer was now making a "layered ineffectiveness claim," asserting that all prior counsel rendered ineffective assistance in failing to raise the issue (Doc. 18-6, p. 27). The

Superior Court found that Boyer offered only a "cursory argument that his confession was coerced" and that he failed to establish the "arguable merit" prong of an ineffective assistance of counsel claim (Doc. 18-6, p. 27)[1]. Petitioner's subsequent petition for allowance of appeal (raising the same claims presented to the Superior Court) was denied by the Supreme Court of Pennsylvania on January 30, 2007.

**A.     The instant petition.**

This habeas proceeding began with the filing of a Petition for Writ of Habeas Corpus on July 5, 2007 (Doc. 1). Petitioner also filed an Amended Petition (Doc. 3). A review of the Petition and Amended Petition leaves some doubt concerning the issues Petitioner has raised. However, this doubt is resolved by referring to Plaintiff's Traverse (Doc. 26), in which he lists his claims again, and restates them in the form they were presented to the Superior Court and Supreme Court of Pennsylvania on appeal from the denial of PCRA relief. Plaintiff, therefore, raises two claims:

1. Trial counsel was ineffective for failing to secure and present alibi witnesses, and evidence of a taped telephone conversation, and appellate counsel was ineffective for failing to raise this claim on direct appeal.

2. Petitioner's conviction was obtained through the use of a coerced confession, and all prior attorneys were ineffective for failing to address this claim at an earlier point in the proceedings.

(Doc. 26, p. 4).

**B.     Statute of Limitations.**

Respondents argue that the instant petition is untimely. For habeas corpus petitions filed after April 24, 1996, challenging state sentences under 28 U.S.C. § 2254, a one-year statute of

---

[1] In his brief, Petitioner maintained that "Detective Logan forced him into signing the statement" by threatening that Petitioner's "son would be taken by CYS and that his co-defendant had told on him." (Doc. 18-5, p. 34).

4

limitations applies, calculated from the date direct review concluded and the judgment became "final." See 28 U.S.C. § 2244(d)(1)(A). Second, the court must determine whether any "properly filed" applications for collateral relief tolled the limitations period. See 28 U.S.C. § 2244(d)(2). Finally, the court must determine whether another statutory exception or equitable tolling is applicable.

Respondents properly performed the calculations and determined that, applying all relevant tolling provisions, Petitioner was required to initiate a habeas proceeding in this Court on or before June 18, 2007 (Doc. 18, pp. 10-12). The instant Petition was dated June 29, 2007, and was docketed on July 5, 2007. Petitioner, however, has attached to his Traverse two documents from the Clerk of Courts establishing that Petitioner made two prior attempts to initiate a habeas proceeding. On February 22, 2007, the Clerk returned documents to Petitioner with a cover letter stating that "according to our records you have no suit on file. If you do have a case number, please resubmit the enclosed documents with your case number." (Doc. 26, Ex. 1). Petitioner sent a copy of this cover letter back to the Clerk with a handwritten notation, "I am seeking to file a Federal Habeas Corpus from my case." (Doc. 26, Ex. 1). On March 5, 2007, the Clerk of Court again sent a cover letter to Petitioner returning documents to him and indicating that additional information was required:

> Please be advised as previously noted the enclosed documents are being returned because you do not have a case pending in this Court. Enclosed is a Habeas Corpus packet which explains how to file this petition in the US District Court. Please resubmit the enclosed document along with your completed Habeas petition for filing.

(Doc. 26, Ex. 2).

Petitioner asserts that both of his prior filings were attempts on his part to file a Petition for Writ of Habeas Corpus, and that it was improper for the Clerk to return them to him without

entering them on the docket. Nonetheless, Petitioner ultimately did submit a habeas petition on the form provided, but he did so about 10 days after the statute of limitations expired. Petitioner cites to Fed.R.Civ.P. 5(d)(4), which provides that "[t]he clerk must not refuse to file a paper solely because it is not in the form prescribed by these rules or by a local rule or practice." Indeed, when Petitioner filed what appeared to be a Petition for Writ of Habeas Corpus, even if it was not in the proper form, the Clerk should have accepted it for filing and the Court could then have ordered Petitioner to amend his petition. Petitioner did seek habeas relief within the statutory period and, accordingly, his claims are not time-barred.

**C.     Exhaustion and procedural default.**

Before addressing the merits of Petitioner's claims, this Court must first determine whether constitutional and federal law issues have been fairly presented to the state courts through direct appeal, collateral review or other available procedures for judicial review. Castille v. Peoples, 489 U.S. 346, 351 (1989). State prisoners are required to exhaust all available state court remedies before seeking federal relief. 28 U.S.C. § 2254(b). The exhaustion requirement serves to protect the interest of comity, which ensures that the state courts have the first opportunity to address and correct violations of state prisoners' federal rights. Rose v. Lundy, 455 U.S. 509, 518 (1982). Generally, in order to satisfy the exhaustion requirement, "a state prisoner seeking federal habeas relief must present each of his claims to the state's highest court." Story v. Kindt, 26 F.3d 402, 405 (3d Cir. 1994).

In addition, a federal court may be precluded from reviewing claims under the procedural default doctrine. Gray v. Netherland, 518 U.S. 152 (1996); Coleman v. Thompson, 501 U.S. 722 (1991). Like the exhaustion requirement, the procedural default doctrine was developed to promote our dual judicial system; it is based upon the "independent and adequate state ground"

doctrine, which dictates that federal courts will not review a state court decision involving a question of federal law if the state court decision is based on state law that is "independent" of the federal question and "adequate" to support the judgment. Coleman, 501 U.S. at 750. Federal habeas review is not available to a petitioner whose constitutional claims have not been addressed on the merits due to procedural default unless a petitioner can demonstrate: 1) cause for the default and actual prejudice as a result of the alleged violation of federal law; or 2) that failure to consider the claims will result in a fundamental miscarriage of justice. Id.

Petitioner's first claim, concerning counsel's failure to present evidence of an alibi defense, was presented to the state courts during PCRA proceedings, and was denied on its merits. Thus, state court remedies have been exhausted, and there is no state court procedural default barring review.

Petitioner's claim that his confession was coerced was first raised in the PCRA court, and was denied as having been waived for failure to raise it previously (Doc. 18-5, p. 38). The issue was altered on appeal to the Superior Court to a claim that all prior counsel rendered ineffective assistance for failing to litigate the voluntariness of Petitioner's confession (Id., p. 20), and the Superior Court addressed the ineffective assistance of counsel claim on its merits by finding that Boyer failed to establish that his underlying claim had arguable merit. If Petitioner were attempting to challenge his confession at this point, his claim would be procedurally defaulted. However, Petitioner's ineffective assistance of counsel claim has been addressed on its merits and is not subject to a state court procedural default.

**C.    Merits.**

A federal court may not issue a writ of habeas corpus unless it concludes either: (1) that the state court's adjudication resulted in a decision that is "contrary to," or an "unreasonable

application of," clearly established federal law as determined by the Supreme Court of the United States; or (2) the state court adjudication was based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d). "Under § 2254(d)(1)'s unreasonable application clause . . . a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams v. Taylor, 529 U.S. 362, 411 (2000). With respect to 28 U.S.C. § 2254(d)(2)'s "unreasonable determination of the facts" clause, a petitioner must demonstrate that a reasonable fact-finder could not have reached the same conclusions given the evidence. If a reasonable basis existed for the factual findings reached in the state court, then habeas relief is not warranted. Campbell v. Vaughn, 209 F.3d 280, 290-91 (3d Cir. 2000), cert. denied, 531 U.S. 1084, 121 S.Ct. 789, 148 L.Ed.2d 685 (2001). Furthermore, "a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

Boyer's claims are framed in the context of ineffective assistance of trial counsel. The Sixth Amendment right to counsel exists "in order to protect the fundamental right to a fair trial." Lockhart v. Fretwell, 506 U.S. 364, 368 (1993) (quoting Strickland v. Washington, 466 U.S. 668, 684 (1984)). The Supreme Court has formulated a two-part test for determining whether counsel rendered constitutionally ineffective assistance: 1) counsel's performance was unreasonable; and 2) counsel's unreasonable performance actually prejudiced the defense. Strickland, 466 U.S. at 687. To determine whether counsel performed below the level expected from a reasonably

competent attorney, it is necessary to judge counsel's challenged conduct on the facts of the particular case, viewed at the time of counsel's conduct. Strickland, 466 U.S. at 690.

The first prong of the Strickland test requires a defendant to establish that his or her attorney's representation fell below an objective standard of reasonableness by committing errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland, 466 U.S. at 688. A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the totality of the circumstances, the challenged action "might be considered sound trial strategy." Id. at 689. The question is not whether the defense was free from errors of judgment, but whether counsel exercised the customary skill and knowledge that normally prevailed at the time and place. Id.

The second prong requires a defendant to demonstrate that counsel's errors deprived him or her of a fair trial and the result was unfair or unreliable. Strickland, 466 U.S. at 689. To prove prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Strickland, 466 U.S. at 694 (emphasis added). A "reasonable probability" is one that is sufficient to undermine confidence in the outcome. Id.

Further, federal law recognizes that trial counsel need not present every possible defense in every case. Indeed, one of counsel's greatest responsibilities at trial is to choose from among possible defenses the defense or defenses most likely to benefit his client. See, e.g., Florida v. Nixon, 543 U.S. 175, 125 S.Ct. 551, 563, 160 L.Ed.2d 565 (2004) (it is reasonable for defense counsel enter guilty plea in capital case to concentrate on penalty phase, thereby avoiding counterproductive course which might result from presenting inconsistent defenses); Jacobs v.

Horn, 395 F.3d 92, 107-08 (3rd Cir. 2005) (counsel's failure to assert a diminished capacity defense was not unreasonable where such a defense would have undermined counsel's strategy to seek acquittal based upon Petitioner's innocence); Porter v. Horn, 276 F.Supp.2d 278, 315-16 (E.D.Pa. 2003) (same). "The right to counsel does not require that a criminal defense attorney leave no stone unturned and no witness unpursued." Berryman v. Morton 100 F.3d 1089, 1101 (3d Cir. 1996). Notwithstanding, defense counsel does have a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. Strickland, 466 U.S. at 691. "[A] particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Id.[2]

**1. Failure to investigate/call witnesses.**

The state courts denied relief with respect to Petitioner's ineffective assistance claims concerning the lack of alibi witnesses on the basis that Petitioner failed to establish through relevant proofs that he had a valid alibi defense (Doc. 18-6, p. 26). Even now, Boyer fails to offer any support for his claim other than the affidavit of Donna Boyer that is part of the state court record. As noted above, Mrs. Boyers's proposed testimony relates only to the August 30, 1999 attempted robbery and, even so, does not unequivocally place Petitioner at a different location at the time of the offense because neither Mrs. Boyer nor the victim could offer precise timing concerning relevant events. In this respect, the PCRA court's ruling, affirmed by the Superior Court, is a ruling under the first prong of the Strickland standard, equivalent to a finding that a presentation of the defense would not have created a "reasonable probability" of a different

---

2   The Pennsylvania standard, applied by the state courts, is not itself contrary to, or an unreasonable application of, Strickland. Werts v. Vaughn, 228 F.3d 178, 204 (3d Cir. 2000).

outcome at trial.  Strickland, supra.  In other words, presentation of testimony from Petitioner's mother that she made a brief telephone call to him in the same general time frame when the first criminal episode occurred cannot be said to provide a reasonable probability of a different outcome at trial.  The state court's ruling in this respect to neither inconsistent with, nor an unreasonable application of, federal law.  See, Diggs v. Owens, 833 F.2d 439, 446 (3d Cir.1987) (counsel did not render ineffective assistance where issues not raised on appeal were without merit.).

       **2.   Ineffective assistance of counsel – failure to challenge confession.**

Petitioner next asserts that "all prior counsel" rendered constitutionally ineffective assistance in failing to move to suppress his confession to police on the basis it was coerced.  Petitioner argued in the Superior Court on appeal from the denial of PCRA relief that he was "intimidated" into signing an unsworn statement by Detective Logan, who threatened that Petitioner's son would be taken away by CYS, and who told Boyer that his co-defendant had already "told on him" (Doc. 18-5, p. 34).  The Superior Court rejected the claim, finding that Boyer failed to offer proof of the "arguable merit" prong of a ineffective assistance analysis.

Detective Logan testified at trial that he interviewed Boyer and, after reading him his Miranda rights, obtained a confession to the crimes committed at the QwiCash store on August 30 and 31, 1999 (Trial Transcript, pp. 157-164).  Boyer signed both a waiver of rights form and Detective Logan's handwritten notes of the interview (Id., pp. 159-160, 164).  Boyer then wrote a letter to the victims apologizing for the crime, and he signed this as well (Id., p. 165).  All three documents were admitted into evidence.  On cross-examination, Detective Logan denied having made any threats or promises to Boyer (Id., p. 189).

Boyer testified in his own defense and conceded that Detective Logan read <u>Miranda</u> warnings to him, and that he signed the waiver of rights form (<u>Id</u>., pp. 211-212). Boyer repeatedly denied that he made any incriminating statements to Detective Logan (<u>Id</u>., p. 213, 226, 234). Instead, Boyer maintained that he signed Logan's notes of the interview without reading them because Logan told him to do so, and that he wrote the letter to the victims at Logan's direction, and because Logan intimidated him into doing so (<u>Id</u>., pp. 215-219). At trial, therefore, Boyer did not testify that he was forced to confess to the crimes. Rather, Boyer repeatedly denied that he made any incriminating statements to Detective Logan.

The Superior Court of Pennsylvania is the only state court to specifically address the merits of Boyer's ineffective assistance of counsel claim. The Superior Court did not, however, make any explicit factual findings, and instead concluded that Boyer had not established that the underlying claim of a coerced confession had "arguable merit," i.e., that there was no probability of a different outcome had counsel presented a motion to suppress. Where a state court's factual findings are not made explicit, a federal court's "duty is to begin with the [state] court's legal conclusion and reason backward to the factual premises that, as a matter of reason and logic, must have undergirded it." <u>Campbell v. Vaughn</u>, 209 F.3d 280, 289 (3d Cir. 2000). In determining what implicit factual findings a state court made in reaching a conclusion, a federal court must infer that the state court applied federal law correctly. <u>Id</u>. (citing <u>Marshall v. Lonberger</u>, 459 U.S. 422, 433 (1982)).

Here, the Superior Court had before it the state court record, including Boyer's trial testimony. Boyer's testimony at trial that he never made any incriminating statements is clearly inconsistent with his argument on appeal from the denial of PCRA relief that he was coerced into making a confession. Therefore, the Superior Court must have determined that Boyer simply

failed to establish that he had been forced to confess to the crimes. This factual finding is not unreasonable on the record in this case.

The Superior Court's legal determination that Boyer failed to make out a claim of ineffective assistance of counsel on the issue of his confession also is not contrary to, nor an unreasonable application of, federal law. To determine whether a statement was voluntary, a federal habeas court must examine the totality of the circumstances and decide whether the statement was made of petitioner's free will, or through some overbearing of the petitioner's will. Miller v. Fenton, 741 F.2d 1456, 1465-66 (3d Cir.1984); see Schneckloth v. Bustamonte, 412 U.S. 218 (1973). Again, Boyer testified under oath that he made no incriminating statements. Counsel could not have succeeded on a motion to suppress without some evidence that an incriminating statement was forced from his client. The testimony at trial from both Boyer and Detective Logan rules out that scenario. Counsel simply cannot be found ineffective for failing to raise a meritless claim. Diggs, supra.

## D. Certificate of Appealability

"A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c). Because Boyer has not made such a showing, a certificate of appealability should be denied .

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) & (C) and Local Rule 72.1.4 B, objections to this report and recommendation shall be filed on or before August 17, 2009. Failure to timely file objections may constitute a waiver of any appellate rights.

                                                 s/Cathy Bissoon
                                                 Cathy Bissoon
                                                 United States Magistrate Judge

Dated: July 31, 2009

Cc:
RICKY DEON BOYER
EK-2060
SCI Somerset
1600 Walters Mill Rd
Somerset, PA 15510